IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| GARY FELICIANO, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. 1:13-cv-00629-GLR |
| TYRONE CROWDER, *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \*\*\*\*\*\* \* \* \* \* \*

<u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Plaintiff Gary Feliciano, by his attorneys, Howard J. Schulman and Schulman & Kaufman, LLC, states as follows:

INTRODUCTION

This is a case about a person who was imprisoned without probable cause for nine (9) weeks for a burglary that he did not commit. In fact, the Plaintiff, as a maintenance technician employed by Blue Ocean Realty, the management company of the apartment building where the burglary occurred, was dispatched to and did repair and secure the entry-way of the victim's apartment. Defendant Acevedo's motion comes to the Court as one pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, one for summary judgment.

Plaintiff asserts both § 1983 and state law claims against Defendant Acevedo. The Complaint alleges in pertinent part:

2.   Gary Feliciano (hereinafter "Plaintiff") was convicted in 1990 of robbery with a deadly weapon and subsequently released on mandatory supervision on July 30, 2009 by the Parole Commission of the State of Maryland (hereinafter "Commission"). Upon release, Plaintiff was employed by Blue Ocean Realty (hereinafter "BOR"), in Baltimore City, Maryland, as a maintenance technician. On November 16, 2010 (sic), Plaintiff and a coworker were dispatched to Milford

    Station II Apartments, which are owned and managed by BOR, where he and his coworker repaired and secured the door of Apartment C following a report of a burglary. Plaintiff did not enter the apartment.

    3.    On December 14, 2011, Detective Ariel Acevedo of the Baltimore City Police Department (hereinafter "BCPD") applied for a judicial warrant without probable cause for the arrest of Plaintiff for First Degree Burglary and various related charges, Case No.: 5B02089351, based on a partial fingerprint belonging to Plaintiff, which was lifted from the "door frame exterior." On that same date a warrant was issued for Plaintiff's arrest, despite a lack of probable cause.

Defendant does not challenge these allegations directly but rather relies on the two unsupported documents, which he placed in the record without affidavit or other foundation, which should not be considered without affidavit or an opportunity for discovery. Fed.R.Civ.P. 56(c)(2); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (reasonable discovery must be afforded before a district court treats a motion to dismiss as a motion for summary judgment); *cf. Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (A Rule 56(e) affidavit must present evidence in substantially the same form as if the affiant was testifying in court). Notwithstanding, construing the record in a light most favorable to Plaintiff, Defendant's motion must be denied.

## STATEMENT OF FACTS

Acevedo's Application for Statement of Charges in support of the motion states:

> On 11/16/10 at approximately 6:00 PM Officer Queen, from the Northwest District, responded to 4001 W. Northern Parkway apartment C-2 for a burglary call. Upon arrival he was met by Mr. Lamont Johnson who stated that he left the dwelling on 11/16/10 at approximately 10:30 AM, locked and secured and returned same date at 6:00 PM and realized that the front door of the apartment was broken and open. A Xbox 360, a 42 inch Vizio TV, a DVD player, and a laptop computer having a value of $2,000 dollars, were stolen from the living room area. The value of the door frame is $150.00 dollars.
>
> Crime lab unit 5824 responded and processed the scene.

> On 11/22/10 I (Det. Acevedo) received the report from the latent
> Print Unit and the same came back with suitable partial latent
> print(s) observed/developed from lift/item 1A, 1B (Door frame
> exterior) have been identified as impressions of the right ring
> finger of Gary Feliciano SID number 240539.
> On 11/26/10 at approximately 3:00 PM I (Det. Acevedo)
> responded to 4001 W. Northern Parkway apartment C-2 and spoke
> with Mr. Lamont Johnson and after a picture of Mr. Gary Feliciano
> was showed to him, stated that he does not know Mr. Gary
> Feliciano and he had no permission to be at the location.
>
> All incident (sic) occurred in Baltimore City State of Maryland.

The Application for Statement of Charges does not refer to Feliciano's past criminal record.

Plaintiff Gary Feliciano was convicted in 1990 of robbery with a deadly weapon, went to prison and was subsequently released on mandatory supervision on July 30, 2009 by the Parole Commission of the State of Maryland. Upon release, he was employed by Blue Ocean Realty in Baltimore City, Maryland ("BOR"), as a maintenance technician. On November 16, 2010, at approximately 3:20 p.m., Plaintiff and his co-worker, Errol Edwards, were dispatched to Milford Station II Apartments ("Milford Station Apartments"), which were owned and managed by BOR, to repair and secure the door of Apartment C ("the apartment") following a report of a burglary. *See* Plaintiff's Exhibits 1, 2, and 3. At approximately 4:00 p.m.,[1] Plaintiff returned to Milford Station Apartments from the BOR main office with the keys to the building, and he and his co-worker, Edwards, proceeded to repair and secure the door of the apartment. *See* Plaintiff's Exhibit 3. According to the Affidavit of Edwards, the occupant, Lamont Johnson, returned to the apartment during the repair process and asked why Plaintiff and Edwards were there, to which

---

[1] According to GPS records, the Affidavit of Edwards, and a letter from BOR Maintenance Supervisor George Smith, Plaintiff and his co-worker, Edwards, arrived at Milford Station Apartments at approximately 3:20 p.m. *See* Plaintiff's Exhibits 1, 2, and 3. Upon arriving at the property, Plaintiff and his co-worker could not gain access to the building, and at approximately 3:44 p.m., Plaintiff returned to the main office of BOR to retrieve keys to the apartment. *Id.* During this time, his co-worker, Edwards, remained at Milford Station Apartments. *See* Plaintiff's Exhibit 2.

they replied they were fixing his door after a report of a burglary. *See* Plaintiff's Exhibit 2. Plaintiff did not enter the apartment any more than was necessary to repair the broken door frame. *Id*.

On the same day, at approximately 6:00 p.m., Officer Queen of the Baltimore City Police Department responded to the apartment at Milford Station Apartments and spoke to Johnson[2] who indicated that, upon returning home that afternoon at 6:00 p.m.,[3] he discovered "that the front door of the apartment was broken and open." *See* Plaintiff's Exhibit 4. The Application for Statement of Charges, however, made no mention of the condition of the door at the time that Queen responded to the apartment, specifically the fact that the door frame had been repaired and was new. The following day, "Crime [L]ab [U]nit 5824 responded and processed the scene[,]" finding partial latent prints of the Plaintiff on the "door frame exterior." *Id.* No other area of the building, including the interior of the apartment, other than the recently-replaced door frame, was dusted for prints. On November 26, 2010, Defendant Acevedo returned to the apartment and showed Johnson a photograph of the Plaintiff.[4] *See* Plaintiff's Exhibit 4. Johnson stated that "he [did] not know [the Plaintiff] and [the Plaintiff] had no permission to be at the location." *Id.* Defendant Acevedo made no additional inquiries regarding other occupants of the apartment, if any, or spoke to any representative of Milford Station Apartments or BOR regarding whether the

---

[2] Defendant Acevedo states that Johnson was "the home owner," when, in fact, Johnson was an occupant of the apartment, which is owned by Milford Apartments, LLC and managed by BOR.

[3] The Application for Statement of Charges by Defendant Acevedo states that Queen responded to the apartment at 6:00 p.m. and that Johnson returned home to discover his burglarized apartment at the same time, 6:00 p.m.

[4] Defendant's Memorandum of Law states that Defendant Acevedo called Johnson and inquired regarding Plaintiff. However Exhibit A provided with the Defendant's Memorandum, as well as the Application for Statement of Charges, clearly state that Defendant Acevedo responded to the Apartment, spoke with Johnson and showed him a picture of the Plaintiff. *See* Defendant's Exhibit A; Plaintiff's Exhibit 4.

Plaintiff had permission to be at the location. Similarly, Defendant Acevedo made no attempt to contact Plaintiff or interview him regarding his fingerprints found at the scene.

On December 14, 2010, Defendant Acevedo applied for and was granted a judicial warrant for the arrest of Plaintiff for first degree burglary and various related charges, based on the partial, latent fingerprints belonging to Plaintiff lifted from the "door frame exterior," and the fact that Johnson did not recognize a photograph of Plaintiff. The warrant issued at the request of Defendant Acevedo set in motion a chain of events which resulted in the arrest of Plaintiff upon his next reporting to his parole officer.[5] *See* Complaint, ¶ 3.

The judicial warrant issued at the request of Defendant Acevedo came to the attention of Plaintiff's parole supervisor, Ms. Joi Bell, on December 15, 2010. As a result, Bell and her supervisor, Ms. Renee Diggs, applied for an administrative retake warrant and arranged for Plaintiff to be arrested at his next reported date. Plaintiff was not questioned before his arrest regarding the underlying judicial warrant. On March 7, 2011, nearly 60 days after his arrest, the State *nol pros'd* all charges against Plaintiff in Case No.: 5B02089351 after concluding that they had charged the wrong person.

ARGUMENT

A.  U.S. Constitution, Fourth Amendment Claim

   I.  DEFENDANT ACEVEDO DID NOT HAVE PROBABLE CAUSE TO APPLY FOR THE ARREST WARRANT FOR PLAINTIFF.

Because the constable blundered, Plaintiff was imprisoned solely because he left a fingerprint on the exterior door frame while doing his job of fixing the door. Under, Maryland

---

[5] Defendant Acevedo characterizes the judicial warrant as only part of the rationale for Bell and Diggs' application for the administrative retake warrant. This characterization holds no weight as Plaintiff was unaware of his obligation to pay supervision fees, had never paid supervision fees before and his parole supervisor had never before applied for an administrative retake warrant on that basis. The first and only time that an administrative retake warrant for Plaintiff was sought was as a direct result of the judicial warrant requested by Defendant Acevedo.

5

law, "[p]robable cause . . . is a nontechnical conception of a reasonable ground for belief of guilt." *State v. Wallace,* 372 Md. 137, 148 (2002) (internal citation references omitted). "A finding of probable cause requires less evidence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion."[6] *Id.* "Probable cause exists where the facts and circumstances taken as a whole would lead a reasonably cautious person to believe that a felony had been . . . committed by the person arrested." *Id.* Significant for purpose of the analysis in this case, probable cause must be "particularized" with respect to the person arrested; *id.*, at 147 (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)); and be supported by specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warranted the conclusion. *Id.*, at 148.

Therefore, to have established probable cause for the arrest of Plaintiff, Defendant would have to establish facts and circumstances leading him to reasonably believe that the Plaintiff broke into and entered the apartment with the intent to commit a felony therein. The facts provided by Defendant in his Application for Statement of Charges, which form the basis for arrest, are that the Plaintiff's fingerprints were lifted from the "door frame exterior" and that the occupant of the apartment did not recognize a photograph of the Plaintiff, and denied ever giving the person in the photograph permission to be inside the apartment. Clearly, Acevedo must have seen that the door had been repaired when he went to the apartment.

With respect to the Plaintiff's fingerprints forming a basis for probable cause, there are several deficiencies. Most obvious among them is that the Plaintiff's fingerprints were lifted from the door frame exterior, not inside the apartment, which was the actual crime scene. A fingerprint on the *exterior* of a door frame of an apartment would not lead a reasonably cautious

---

[6] In assessing the "quantifiable probability," the same standard of probable cause applies to warrantless searches, warrantless arrests and arrests made pursuant to a warrant. *Id.*, 372 Md. at 147 & n.3.

person to believe that the person to whom the fingerprint belonged was ever present in the *interior* of the apartment. Thus, the presence of the Plaintiff's fingerprints on the exterior door frame gives rise only to the inference that the person to whom the print belongs touched the door frame at some unknown time and is not sufficient under Maryland law to show that the Plaintiff entered the apartment, a necessary element of the crime of burglary.

Maryland law requires that "fingerprint evidence found at the scene of the crime must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime." *Musgrove v. State,* 3 Md.App. 54, 56-57 (1968) (quoting *McNeil v. State*, 227 Md. 298, 300 (1961)). "[T]he 'circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime' need not be circumstances completely independent of the fingerprint, and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed." *Lawless v. State*, 3 Md.App. 652, 658-59 (1968). Here, the fingerprint was not within the crime scene.

In *Musgrove,* the Court held that the sole fact that the accused's fingerprint was found on a jewelry case from which jewelry was missing was insufficient to sustain a larceny conviction. 3 Md.App. 54. In that case, the Court noted that there was no reference to the period of time within which the fingerprint had been impressed, the investigating officers had not questioned the two other occupants who had access to the apartment at that time, and the occupant who was questioned had "conceded that the apartment had been occupied by a repairman during part of the day that the crime occurred." *Musgrove*, 3 Md.App. at 56-57.

In this instance, the fingerprint on the exterior door frame is consistent with any number

7

of innocent factual scenarios, including that it was the fingerprint of the person who fixed the door that had been broken and had been repaired as of the times the crime lab and Defendant Acevedo went to the apartment. Additionally, the crime lab did not dust for prints anywhere in the interior of the apartment. A fingerprint found on the television stand where the stolen television, DVD player and Xbox 360 previously sat, for example, would be more persuasive than a fingerprint found on a door-frame exterior. Even had Plaintiff's fingerprint been lifted from the television stand, which it was not, this would still be insufficient evidence by itself to give rise to an inference that the Plaintiff had burglarized the apartment. Therefore, the presence of Plaintiff's fingerprint on the door-frame exterior would not lead to the conclusion that Plaintiff either broke into or entered the apartment. It would simply lead to the conclusion that the Plaintiff was outside of the apartment at some point in time. *Cf. DiPino v. Davis*, 354 Md. 18, 55 (1999) (probable cause lacking where defendant officer neither knew nor had reason to believe that one of the elements of the crime had been met).

Similarly, Defendant Acevedo did not question other persons with access to the apartment at the time of the burglary, for example, other occupants of the apartment, if any, the owners of the apartment, Milford Apartments LLC or the management company of the apartment, Blue Ocean Realty. *See id*. As in *Musgrove,* Acevedo did not follow up to see who repaired the door that he necessarily saw had been fixed.[7] Finally, like the case of *Musgrove*, there was no reference to the period of time within which the Plaintiff's fingerprint had been impressed. *See id*. at 54.[8]

---

[7] The presence of a fingerprint on the *exterior* of the door frame would not be indicative that the owner of the fingerprint broke into the apartment, a necessary element of burglary. This is especially persuasive given that the door frame in question was not broken at all, as it was repaired immediately following the burglary and before any officers responded to process the scene. Even if the door frame was not replaced, which it was, there was no reference by the crime lab of how old the fingerprints were.

During his investigation of the burglary at the apartment, Defendant Acevedo did not inquire regarding other occupants of the apartment or persons with access to the apartment. Nor did Defendant Acevedo speak to any representative of Milford Station Apartments or BOR regarding whether the Plaintiff had permission to be at the location. Similarly, Defendant Acevedo did not make any attempt to contact Plaintiff or interview him regarding his fingerprints found at the scene. Had the Defendant made inquiry with Milford Station Apartments, BOR, or the Plaintiff, he would have learned that the Plaintiff was, in fact, the maintenance technician dispatched to repair the door frame after the burglary of the apartment.

Apparently as additional support of his assertion that there existed reasonable grounds to believe that Plaintiff committed the burglary, Defendant states that Plaintiff was on parole for another crime involving theft of property and that Plaintiff had a history of criminal activity involving theft. Defendant's Memorandum, p. 6, 8. However, the Plaintiff's criminal history and the fact that he was on parole for a crime involving theft was not stated in Defendant's Application for Statement of Charges and, therefore, it could not reasonably have been considered in the determination of probable cause to issue a warrant for the arrest of Plaintiff. Assuming that Acevedo had considered the Plaintiff's criminal record, it must have some evidentiary significance beyond the proposition that "once a criminal, always a criminal." *Beck*

---

[8] Other cases have held that fingerprint evidence, when not sufficiently coupled with additional evidence, were insufficient to sustain a conviction: *Mc-Garry v. State*, 82 Tex.Cr.R. 597 (1918) (a fingerprint found on a broken window pane was insufficient to prove the defendant was the robber where it was shown that the pane was in a place accessible to the general public and the pane contained other prints.); *State v. Minton*, 228 N.C. 528 (1948) (fingerprints found on a glass door broken at the time of the crime were insufficient to sustain a conviction where the place entered was a public place, prints other than the defendant's were found on the pane and the defendant had been lawfully on the premises earlier that night during business hours.); *Ivey v. State*, 176 So.2d. 611 (Fla.App. 1965) (fingerprint found on a glass jalousie on the front door of a burglarized store was insufficient to sustain a conviction where there was no reference to the time within which the fingerprint was impressed, despite the defendant's statement that he had never been in the town where the store was located.).

*v. Ohio*, 379 U.S. 89, 97 (1964)("[T]o hold that knowledge of [a previous criminal record] constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will.").

### II. DEFENDANT ACEVEDO IS NOT ENTITLED TO QUALIFIED IMMUNITY.

A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotations omitted). "A court … must [first] consider [the] threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The standard upon which the reasonableness of the officer's actions must be judged in this case is one of "objective reasonableness." *Malley v. Briggs*, 475 U.S. 335, 344 (1986).

The Defendant asserts that, because he "performed his duties reasonably under the circumstances[,]" he is entitled to qualified immunity under the analysis in *Saucier*. Defendant's Memorandum, p. 7. As discussed above, the law in Maryland is well settled that a fingerprint, without more, is not sufficient to establish probable cause. *See Lawless v. State*, 3 Md.App. 652. This is especially so when the fingerprint in question is found on the exterior of the crime scene. It is not objectively reasonable to believe that a fingerprint lifted from the exterior of a burglarized apartment indicates that the owner of the fingerprint either broke into or entered the apartment. Defendant Acevedo needed more information before he could reasonably and objectively infer that Plaintiff was in the apartment. He did not attempt to develop more facts and took the easy way when, if he had attempted to develop more facts, he would have

discovered that Plaintiff was an innocent man doing his job.

  III.  DEFENDANT DID NOT HAVE PROBABLE CAUSE TO APPLY FOR THE ARREST WARRANT FOR PLAINTIFF FOR PURPOSES OF THE STATE LAW CLAIM.

  For the reasons set forth in Section I, Defendant Acevedo lacked probable cause to justify his application for an arrest warrant for Plaintiff for the burglary of the apartment.[9]

  For the foregoing reasons, Plaintiff Gary Feliciano respectfully requests that the Defendant's Motion to Dismiss or, In the Alternative, Motion for Summary Judgment be denied.

          Respectfully submitted,

          _____/s/_____
          Howard J. Schulman (Fed. Bar #00129)
          hjschulman@schulmankaufman.com
          Schulman & Kaufman, LLC
          100 N. Charles Street, Suite 600
          Baltimore, Maryland 21201
          Phone: 410-576-0400

---

[9] In Count III of Plaintiff's Complaint, "Article 24" should actually read "Article 26." Plaintiff will file a motion to amend the complaint to correct this reference upon receiving consent or lack thereof from counsel for Defendant Acevedo.